568 P.2d 491 (1977)
Hal Gordon TAMBLYN and Katherine Tamblyn, Plaintiffs-Appellants,
v.
MICKEY AND FOX, INC., CONSULTANT ENGINEERS, Chen & Associates, Inc., and one or more John Does whose identities are presently not known to Plaintiffs-Appellants, Defendants-Appellees, and
Golden Key Homes Building Corp., a Colorado Corporation, Defendant.
Nos. 75-884 and 76-304.
Colorado Court of Appeals, Div. I.
May 19, 1977.
Rehearing Denied June 9, 1977.
Certiorari Granted September 6, 1977.
*492 Feder & Morris, P. C., Harold A. Feder, Denver, Alperstein, Plaut & Busch, P. C., Arnold Alperstein, Lakewood, for plaintiffs-appellants.
Tallmadge, Tallmadge, Wallace & Hahn, C. Thomas Bastien, Denver, for Mickey & Fox, Inc., defendant-appellee.
Caskins, Hertzman & Chanzit, Richard M. Chanzit, Denver, for Chen and Associates, Inc., defendant-appellee.
VanCISE, Judge.
In an action for damages for alleged negligence of defendants Mickey & Fox, Inc., and Chen & Associates, Inc., in doing engineering work related to the construction of plaintiffs' residence, summary judgments were entered in favor of said defendants on the basis that the action was not brought within two years after the claim for relief arose and was therefore barred by § 13-80-127, C.R.S. 1973. These judgments were made final for purposes of appeal pursuant to C.R.C.P. 54(b). We affirm.
The action was commenced May 27, 1975. The house was built and sold by defendant Golden Key Homes Building Corp. (the builder) in May 1972 to persons who in January of 1973 sold it to the plaintiffs. On May 15, 1973, plaintiffs sent a letter to the builder, notifying it that there were defects in their house, including the following:
"There is a leak in the east wall of the basement.
"The basement floor is cracked from side to side, meeting at the center post.
"The basement seems to be open above the foundation in the northwest corner.
"Plants are growing through the foundation in the downstairs bedroom.

*493 "The kitchen window sill is sagging badly on the north end and there is considerable cracking there around the window sill. Also, the northern-most of the four windows in the living room has a similar problem.
"The bathtub seems to be moving.
"The sidewalk is heaving and the stairs are cracking, the bottom two stairs have cracked away from the other. There is cracking along the wall. . ."
In affidavits filed in opposition to defendants' motions for summary judgment, plaintiffs said that the defects set forth in their 1973 letter appeared at that time to be "of a very minor nature" or merely "cosmetic and finish details which the contractor is normally expected to correct," and that it was not until late spring of 1974, when they observed extensive cracking in an upstairs bedroom and around the chimney, that they became aware that the problems were more serious. In July 1974, they employed an engineering firm, and in its report they were advised that the house had serious structural problems.
On appeal, plaintiffs contend that when the claim for relief arose and, therefore, when the limitations period commenced, is a disputed material fact issue which cannot be resolved by summary judgment. They argue that the claim for relief arose, at the earliest, in the spring of 1974, and since, other than the builder, they did not know even at that time who the potential defendants were, the claim against these engineer defendants did not arise until their identity was known to plaintiffs. We do not agree.
In Housing Authority v. Leo A. Daly Co., 35 Colo.App. 244, 533 P.2d 937, another cracked structure case, as against the owner's contention that the statute of limitations did not begin to run until March 1971 when it obtained an engineering report of the cause of the damage, the court stated:
"In cases involving damage to land resulting from seepage of water it has been held that the cause of action accrues at the time the land is first visibly affected by the seepage. . . . It has also been held that it is not necessary for the final or ultimate damages to be known or predictable before the limitation period commences. What is required is that there be some damage which would entitle plaintiff to maintain a cause of action.. . .
"By December 1969 or January 1970 plaintiff was aware that it had a potential action for damages and was aware who the potential defendants would be. The fact that it was not until March 1971 that plaintiff knew the exact cause of the damage does not alter the significance of that earlier knowledge. Once plaintiff had determined the existence of the damage and the possibility that negligence was involved, the statute provided two years in which to make any necessary tests and to determine on what theory it would proceed against the defendants. Since the action was not brought within two years of January 1970, it is barred."
Here, plaintiffs' affidavits raised an issue of fact with regard to the date of discovery of the extent of the damage and the cause of the defects, but that issue was not germane to the question before the trial court. At some time between January 2 and May 15, 1973, the plaintiffs became aware of numerous deficiencies in workmanship and materials and therefore they then knew of "the existence of the damage and the possibility that negligence was involved." At that point, there was damage entitling plaintiffs to maintain a cause of action, Doyle v. Linn, Colo.App., 547 P.2d 257, even though they may not have been fully aware until later of the seriousness of the damage or the exact cause. Housing Authority v. Leo A. Daly Co., supra; see Valenzuela v. Mercy Hospital, 34 Colo.App. 5, 521 P.2d 1287; see Hankins v. Borland, 163 Colo. 575, 431 P.2d 1007; Greene v. Green Acres Construction Co., Colo.App., 543 P.2d 108.
The statement in Housing Authority, supra, that plaintiff "was aware who the potential defendants would be" was only factual and was a matter of no consequence *494 in the resolution of that case. The determinative fact was when plaintiff should have been first aware that it had a potential action for damages. Here, plaintiffs' lack of knowledge of the identity of the engineering defendants at the time they were first aware that there was damage to the house does not toll the statute. Neel v. Magana, Olney, Levy, Cathcart & Gelfand, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421; Rose v. Dunk-Harbison Co., 7 Cal.App.2d 502, 46 P.2d 242. They had two years from that time within which to conduct any investigation and to determine on what theory they would proceed and against whom.
Since no material issue of fact was before the trial court with regard to the determination that a cause of action had arisen more than two years before plaintiffs' action was begun, summary judgments in favor of these defendants were proper. Valenzuela v. Mercy Hospital, supra.
Judgment affirmed.
COYTE and PIERCE, JJ., concur.